## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2015, 6:29 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Erik H. Carter | Amy O. Carson |
| Carter Legal Services LLC | Ashley Balicki |
| Noblesville, Indiana | Mitchell Law Group |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re Paternity of E.R.B. | December 30, 2015 |
| Michael Bruzzese | Court of Appeals Case No. 49A02-1503-JP-150 |
| *Appellant-Respondent,* | |
| | Appeal from the Marion County Circuit Court Paternity Division |
| v. | |
| | The Honorable Sheryl L. Lynch, Judge |
| Rachel Kensinger, | The Honorable Tiffany U. Vivo, Magistrate |
| *Appellee-Peitioner.* | |
| | Trial Court Cause No. 49C01-1201-JP-751 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent Michael Bruzzese ("Father") and Appellee-Petitioner Rachel Kensinger ("Mother") are the parents of seven-year-old E.B. The parties separated when E.B. was approximately two years old and have shared joint legal and physical custody of E.B. since that time. The instant litigation began after the parties could not agree on where E.B. would attend kindergarten in the fall of 2014, and how the parenting schedule should be adjusted to account for her attending school. Ultimately, the trial court ordered that E.B. attend school in Fishers, Indiana, near Mother's residence. The trial court also granted Mother primary physical custody and adjusted the parenting schedule such that every two weeks E.B. would spend eight days with Mother and six days with Father. Father appeals arguing that E.B. becoming school-age was not a substantial change in circumstances sufficient to justify a modification of custody. We affirm the trial court's decision.

## Facts and Procedural History

[2] Father and Mother are the parents of E.B., who was born on December 9, 2008. Sometime in the following three years, Mother and Father separated. The parties lived approximately 34 minutes from one another with Mother living in Hamilton County and Father in Marion County. On July 31, 2012, the parties filed an agreed decree of paternity which, among other things, acknowledged that Bruzzese was E.B.'s father, established joint legal and physical custody of E.B., outlined an approximately equal (50/50) parenting time schedule, and maintained that neither parent would pay child support to

the other. The decree also provides that when E.B. reaches school age, the parties will agree on a kindergarten program which is in E.B.'s best interest and that they would attend mediation if they were unable to agree on a kindergarten program. E.B. began kindergarten in the fall of 2014.

[3] On February 18, 2014, Mother filed a motion for modification of custody, parenting time, and child support. In the motion, Mother claimed that the parties could not agree on a school, that it was in the child's best interest to attend school in Hamilton County, and requested primary physical custody of E.B. during the school year. On March 10, 2014, Father filed a motion for court ordered custody and parenting time evaluation. On May 20, 2014, Mother filed a petition for temporary physical custody and request for emergency hearing to address the issue of where the child should attend kindergarten. On July 9, 2014, the trial court held a hearing on Mother's petition for temporary physical custody to determine where the child would begin school in the fall. On July 17, 2014, the trial court entered an order on temporary custody in which it found that it was in the child's best interest to begin the 2014 school year at New Britton Elementary which is located in Hamilton County near Mother's residence. The trial court also found that the child beginning school was a substantial change in circumstances which may require a modification of parenting time but declined to enter an order on temporary modification of physical custody as the matter was scheduled for final hearing on August 14, 2014.

[4] The final hearing to determine parenting time and child support was rescheduled and took place on January 21, 2015. Prior to the hearing, the parties entered into an agreed stipulation in which they agreed that E.B. "shall continue to attend school at New Britton Elementary in Fishers, Indiana, and thereafter Hamilton Southeastern Schools until further order of the court or graduation, whichever should first occur." Appellant's App. p. 60. On March 3, 2015, the trial court issued its final order which found, in relevant part, as follows:

> 5. The parties followed the parenting time schedule pursuant to their 2012 Agreed Entry except that the child spent overnight with Mother every Monday. The schedule later changed as a result of changes in childcare. Father quit his job as a bartender which enabled him to care for the child and have additional parenting time with the child on Thursdays, Fridays and Saturdays. Mother made a request to Father to share the opportunity for additional parenting time and Father agreed to alternate Thursday overnights with Mother. Father refused to share Fridays and Saturday nights with Mother because of concerns that the child was being alternated too frequently already between the parties' households. As of the final hearing, the child was being exchanged between the parties several times during the week pursuant to the following schedule:
>
> | | |
> |---|---|
> | Sunday | Mother |
> | Monday | Parties Alternate |
> | Tuesday | Father |
> | Wednesday | Mother |
> | Thursday | Parties Alternate |
> | Friday | Father |
> | Saturday | Father |
>
> 6. Both parties are married. Father lives in the Southside of Indianapolis. Mother lives in the Northside of Indianapolis. The

drive time between the parties' communities range from 25 to 35 minutes without rush hour traffic up to 45 minutes or more depending on the traffic and weather.

7. Father is not employed. He is a full-time law student at IU McKinney School of Law. Father has not sought employment while at law school. Father's [sic] receives financial support from his wife and she pays most of Father's expenses. Father filed his Verified Financial Declaration Form on July 3, 2014 to which no changes have occurred as of the final hearing. Father derives $357.00 per week from his Student Loan Grad Plus. Father's weekly household expenses are $1,064.65.

8. Father's school schedule changes every semester. Father has classes on Mondays and Wednesdays from 8:30 a.m. until 3:45 p.m. Father is able to leave school on Mondays at 3:15 p.m. Father also has classes on Tuesdays from 10:40 a.m. until 4:15 p.m. and on Thursdays from 2:15 p.m. until 4:15 p.m.

9. Father's family lives in Ohio. Father does not know where he will be employed after he graduates law school. Father does not believe he is able to make any decisions regarding relocation until he secures employment following graduation. Father does not intend to stay in the Southside of Indianapolis and he hopes to relocate to the Northside of Indianapolis.

10. Father's wife (Step-Mother) works as a hairdresser in Carmel. Step-Mother works Monday through Saturday. Step-Mother has a fairly flexible schedule. She is able to make changes to her schedule with adequate notice. Because of the flexibility in her schedule, Step-Mother is able to provide transportation for the child including to and from school; Step-Mother has provided transportation for the child when Father is unavailable. Father also transports the child to school when he is able. Father and Step-Mother have ensured that the child arrives at school on time. School begins at 8:50 a.m. and ends at 3:35 p.m. Step-Mother and the child have a good relationship.

11. Mother is employed at Sahm's in Fishers where she has worked for 5 years. She is married to a co-owner of the

establishment. Mother's work schedule is flexible. Mother is able to create her own schedule thus allowing her to be available for the child for after school transportation, care and extracurricular activities. Mother is able to provide transportation for the child when Father and/or Step-Mother are unavailable. New Britton is very close [to] Mother's home. Mother volunteers at the child's school and eats lunch with the child at school. The child is doing well at New Britton and has made friends. The child has participated in social events, and attended birthday parties and sleepovers with friends she has made.

12.    Mother filed her Verified Financial Declaration Form on January 19, 2015 and noted her income at $579.00 per week. The cost of medical insurance: for [E.B.] is $25.00 per week.

13.    Mother has lived in Fishers, Indiana for almost her entire life. Mother's entire family resides in the north side of Indianapolis. Mother has a 7 month old baby with her husband. The child enjoys spending time with the baby. Mother and her husband have no intention of relocating from Fishers. Step-Father and the child have a good relationship.

14.    Mother has always had the child for parenting time on Sundays at 11:00 a.m. Mother and child attend a church service on Sundays at 11:45 a.m. Mother and the child have established a close relationship with their church community. The child attends Sunday school at the church and she has formed close relationships with other children in the church. The parties agree that the child enjoys attending church and that the child looks forward to going to church. Father does not attend church nor does he have any intentions of taking the child to church. Father is in agreement that the child should continue to attend church with Mother.

15.    The parties have generally been able to agree on issues relating to [E.B.]. The child's doctor is in the Southside of Indianapolis and was selected by agreement when the family resided in the Southside. The parties communicate by phone and text messaging. The parties' communications have been cordial.

16. Contradicting testimony was presented regarding the parties' willingness to accommodate one another regarding parenting time issues and regarding enrolling the child in certain activities. Father allowed the child to participate in summer camp in 2014 from Mother's home even though it conflicted with his parenting time.

17. Dr. Krupsaw conducted an evaluation and submitted his report to the Court on August 4, 2014. Dr. Krupsaw's evaluation occurred between early May, 2014 and early July, 2014. The child was not yet attending school when the evaluation was conducted, Dr. Krupsaw did not conduct additional inquiry into the status of the parties and the child after the child began attending Kindergarten.

18. Dr. Krupsaw testified at the final hearing; Dr. Krupsaw did not find that the distance between the parties' residences and the travel associated with parenting time had adverse effects on the child and concluded that the child has adapted well to her schedule. Dr. Krupsaw maintained, however, that the effects on the child as she gets older may change as it relates to her schooling, her access to friends and her activities. Dr. Krupsaw also acknowledged that the current parenting time schedule involved too many "back and forths." Dr. Krupsaw concluded that parenting time should be divided equally or close to being equal such that the child would enjoy substantial quality time with her parents and not be subjected to lengthy separations from either of them.

19. The parties do not currently have a child support order due to their equal parenting time arrangement. The parties equally share the cost of the child's controlled expenses, uninsured medical expenses and extracurricular activities.

20. Mother has requested the Court enforce the parties' Agreed Decree of Paternity relating to Saturday parenting time. The Court finds that neither party was ordered to have Saturday parenting time and that due to changes in circumstances the parties modified then agreed upon parenting time schedule

without seeking an order modifying parenting time with the Court. While Mother does not agree to Father having all Saturdays for parenting time and her repeated requests that Saturdays be alternated between the parties has been denied by Father, this Court cannot enforce something that has not been made an order.

21. Pursuant to I.C. 31-17-2-21 a court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5.

22. Pursuant to I.C. 31-17-2-8, the factors relevant to a custody determination are: 1) the age and sex of the child; 2) the wishes of the child's parent or parents; 3) the wishes of the child, with more consideration given to the child's wishes if the child is at least 14 years of age; 4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling; and any other person who may significantly affect the child's best interest; 5) the child's adjustment to the child's home, school, and community; 6) the mental and physical health of all individuals involved; 7) evidence of a pattern of domestic or family violence by either parent; and 8) evidence that the child has been cared for by a de facto custodian.

23. The Court finds that it is in the child's best interest that custody be modified as there has been a substantial change in circumstances in the relevant custody factors. Specifically, the child is now 6 years old and is attending school. At the time the parties entered into their agreement regarding custody, the child was 3 years old and not attending school. The Court finds that the child's needs have changed and her needs will continue to change as she ages. In addition to attending school in Mother's school district, the child is involved in activities in Mother's community; the child has developed friendships at school and at church; the child's religious training is occurring in Mother's community; Mother is actively involved in the child's school; Mother has a flexible schedule that allows her to be available for

the child; Mother's residence is located near the child's school; the majority of the child's family lives within the general area where Mother resides; the child has a good relationship with Step-Father and the child has a half-sister with whom she enjoys spending time in Mother's home.

24. The Court finds that Mother is invested in remaining in her current residential area in that Mother has resided in Fishers, Indiana for most of her life; Mother's family lives within the general vicinity of the north side; and Mother is married to the co-owner of Sahm's Restaurant in Fishers. Therefore, Mother is able to provide the child with predictability as the child becomes increasingly engaged academically and socially.

25. The Court finds that both parties love their child very much and that they are married to individuals who are bonded with the child and who have assisted in the care of the child. The Court further finds that while the parties may have had occasional disagreements, they have, over the years, been able to communicate effectively about the child and make decisions regarding what is in her best interest.

26. The Court finds that the child is accustomed to being in the care of her parents and while she enjoys long drives to and from both of her homes, the current parenting time schedule, which not only requires the child to commute anywhere from 25-45 minutes or more but involves several exchanges during the week, is fragmented and disruptive. Furthermore, the Court finds that the current parenting time schedule is prohibitive on the child as the child becomes more involved at school and in her community and the demands on her increases.

27. The Court acknowledges that while Dr. Krupsaw has recommended that parenting time be allocated equally or close to equal in his report, the Court determines that Dr. Krupsaw's conclusion is based upon an evaluation he conducted prior to the child attending school and does not take into account how the parties' joint physical custodial arrangement and their parenting time schedule has been affecting the child since she began

attending school. Nevertheless, the Court takes into account Dr. Krupsaw's assessment that it is likely that the effects on the child as she gets older may change as it relates to her schooling, her access to friends, and her activities. The Court also considers Dr. Krupsaw's assessment that it may be advantageous that the child spend more time in Mother's care since the child is attending school in Mother's residential district. The Court concludes that it is in the child's best interest that parenting time be modified.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.     Mother shall have primary physical custody of [E.B.]. The parties shall share joint legal custody of the child.

2.     Father shall have parenting time as follows: every Wednesday for an overnight; every Thursday for an overnight; and every other weekend from Friday until Sunday. All holiday, break and special occasion parenting time shall be pursuant to the Indiana Parenting Time Guidelines.

3.     Father shall pick-up the child at the end of the school day on Wednesdays to begin his parenting time and Father shall transport the child to school every Thursday morning. Father shall also pick-up the child at the end of the school day on Thursdays and Father shall transport the child to school every Friday morning at the conclusion of parenting time. During his weekend parenting time, Father shall pick-up the child at the end of the school day on Friday and Mother shall pick-up the child from Father at 11:00 a.m. on Sunday.

4.     Father shall be entitled to make-up any regularly scheduled patenting time that he misses as a result of a scheduling conflict.

5.     The parties shall have the opportunity for additional parenting time with the child in the event it becomes necessary that the child be cared for by a third party other than the parties or a member of their household (someone living in the parties' home who is related to the child by blood, marriage or adoption) for 4 hours or more. The party needing the care shall, within 24 hours of the need, offer and provide notice to the other party of

the opportunity for additional parenting time. The opportunity for additional parenting time is optional to either party depending on their availability.

6.      Pursuant to the attached Child Support Obligation Worksheet (CSOW), Father shall pay Mother child support of $29.00 per week. The Court hereby waives payment of said support as a result of the cost associated with Father having to provide transportation for the child to and from school and for parenting time.

7.      Father shall continue to provide health insurance coverage for the child at a reasonable cost when said coverage is available. Father shall provide Mother with a current insurance card as evidence of the child's insurance coverage. The Six Percent Rule shall apply regarding payment of the child's uninsured medical expenses with Mother paying the first $500.00 of the same and Father paying 50% and Mother paying 50% thereafter.

8.      By agreement, the child shall remain in school at New Britton Elementary School in Fishers, Indiana.

9.      The parties may agree to up to 2 extracurricular activities for the child per year. Neither party shall unreasonably withhold his/her consent to the child's participation in a proposed activity. The parties shall equally share in the cost of the agreed upon activity. Absent an agreement, the party desiring to sign up the child in an activity shall bear 100% of the cost.

10.     The parties shall alternate claiming the child as an exemption in their State and Federal income taxes with Mother claiming the child on all even tax years and Father claiming the child on all odd tax years.

11.     The parties shall abide by the Indiana Relocation Statute regarding all residential moves.

12.     By agreement, Ryan Cassman is appointed Level II parenting time coordinator. See Agreed Stipulation as to Issues Before the Court.

13.     Mother's request to enforce the parties' Agreed Decree of Paternity is denied. Mother's request for payment of her attorney's fees relating to said request is denied.

Appellant's App. p. 9-17.

# Discussion and Decision

On appeal, Father raises several contentions of error which we consolidate and restate as follows: whether it was appropriate for the trial court to consider the child becoming school age as a substantial change in circumstances sufficient to support an order modifying custody.

# Standard of Review

The party seeking modification of custody bears the burden of demonstrating that the existing arrangement is no longer in the child's best interest and that there has been a substantial change in one or more of the enumerated statutory factors. *Bailey v. Bailey*, 7 N.E.3d 340, 343 (Ind. Ct. App. 2014). "We review custody modifications for an abuse of discretion and must grant latitude and deference to trial courts in family law matters." *Id*. "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court." *Bryant v. Bryant*, 693 N.E.2d 976, 977 (Ind. Ct. App. 1998), *trans. denied*.

The trial court *sua sponte* issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A).

When reviewing specific findings of fact and conclusions thereon under Indiana Trial Rule 52(A), this court may not affirm the judgment on any legal basis. Rather, we must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind. Ct. App. 1991), *trans. denied*. In reviewing the judgment, we must first determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Id*. The judgment will be reversed only when clearly erroneous or contrary to law. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), *trans. denied*. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. We will not reweigh the evidence or assess witness credibility. *Id*.

However, when the trial court enters findings and conclusions *sua sponte*, the specific findings only control as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind. Ct. App. 1991). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id*.

*Bryant*, 693 N.E.2d at 977.

## Substantial Change in Circumstances

[8] Under Indiana Code section 31-17-2-21, a court "may not modify a child custody order unless (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter."

The factors to be considered by the court listed in Indiana Code section 31-17-2-8 include

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
>> (A) home;
>>
>> (B) school; and
>>
>> (C) community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

[9] Father argues that there is insufficient evidence to support the trial court's order modifying custody. Father acknowledges that "[t]he evidence in the record supports that it is in [E.B.]'s best interests for the parenting time schedule to change." Appellant's Reply Br. p. 11. However, Father contends that there was no substantial change in circumstances necessary to modify custody pursuant to Indiana Code section 31-17-2-21. Specifically, Father claims that a child becoming school age is not a substantial change in circumstances

sufficient to justify a modification of physical custody; although, Father provides no cases supporting such a position.

[10] In the case of *In re Paternity of C.S.*, we addressed a similar argument when the mother of C.S. argued "that there is no Indiana case law that 'supports the proposition that the mere fact of a child being eligible to attend school…is a change so substantial as to warrant modification of custody." 964 N.E.2d 879, 883-84 (Ind. Ct. App. 2012), *trans. denied*. However, we found that the child's readiness to enter kindergarten was a substantial change in circumstances warranting modification. *Id*. at 884. Nevertheless, E.B.'s entering school is not the only change in circumstances in this case.

[11] The parties agreed on the initial parenting time schedule on July 13, 2012. Since that time, the parties continued to adjust the schedule, mostly amicably, due to various changes in their personal and professional lives; Father quit his bartending job and began attending law school in the fall of 2013, both Mother and Father married, and Mother had a child with her husband. At the time of the hearing, the parenting schedule was such that the child was being exchanged between the parties several times each week. Both parties, as well as Dr. Krupsaw, felt that the parenting schedule was not in the child's best interest due to the frequent transitions.

[12] After outlining the above-mentioned Section 31-17-2-8 factors, the trial court found as follows with regards to change in circumstances:

The Court finds that it is in the child's best interest that custody be modified as there has been a substantial change in circumstances in the relevant custody factors. Specifically, the child is now 6 years old and is attending school. At the time the parties entered into their agreement regarding custody, the child was 3 years old and not attending school. The Court finds that the child's needs have changed and her needs will continue to change as she ages. In addition to attending school in Mother's school district, the child is involved in activities in Mother's community; the child has developed friendships at school and at church; the child's religious training is occurring in Mother's community; Mother is actively involved in the child's school; Mother has a flexible schedule that allows her to be available for the child; Mother's residence is located near the child's school; the majority of the child's family lives within the general area where Mother resides; the child has a good relationship with Step-Father and the child has a half-sister with whom she enjoys spending time in Mother's home.

Appellant's App. p. 14. Additionally, Father does not intend to continue living on the Southside of Indianapolis and hopes to relocate to the Northside of Indianapolis. Father does not know where he will be employed after he graduates law school and does not believe he is able to make any decisions regarding relocation until he secures employment following graduation. Therefore, Father's schedule and most likely his residence will both change within the coming year.

[13] Accordingly, we find that the trial court was within its discretion in finding that there was a change in circumstances sufficient to justify a modification of custody. Specifically, there were substantial changes to three of the factors listed in Section 31-17-2-8: (1) the age of the child; (2) the child's adjustment to

her home, school, and community; and (3) the relationship between the child and her parents, her sibling, and any other person who may significantly affect the child's best interests. At the time of the initial parenting schedule, E.B. was three years old. At the time of the trial court's order, E.B. was six years old, she had begun school, had established a relationship with her church community in Fishers, began attending Sunday school, had a new baby sister, and had become increasingly involved in extracurricular activities in Mother's community including gymnastics and various camp activities.[1]

[14] Father does not argue that the parenting time arrangement ordered by the trial court is not in the best interest of the child. Nevertheless, we note that there is ample evidence to support the position that it is in the child's best interest to spend slightly more time staying with Mother.

> The Court finds that Mother is invested in remaining in her current residential area in that Mother has resided in Fishers, Indiana for most of her life; Mother's family lives within the general vicinity of the north side; and Mother is married to the co-owner of Sahm's Restaurant in Fishers. Therefore, Mother is able to provide the child with predictability as the child becomes increasingly engaged academically and socially.

* * *

---

[1] Father also appears to argue that the trial court erred by ordering E.B. to attend school near Mother and then using that enrollment as the substantial change in circumstances to support a modification of custody. This is a misinterpretation of the trial court's order. The primary substantial change in circumstance was the child becoming school age, not the child attending a specific school. Furthermore, the parties agreed prior to the January 21, 2015 hearing that E.B. would "continue to attend school at New Britton Elementary." Appellant's App. p. 60. The trial court was certainly permitted to consider the location of the agreed upon school and E.B.'s adjustment thereto in fashioning a parenting time schedule.

[T]he Court takes into account Dr. Krupsaw's assessment that it is likely that the effects on the child as she gets older may change as it relates to her schooling, her access to friends, and her activities. The Court also considers Dr. Krupsaw's assessment that it may be advantageous that the child spend more time in Mother's care since the child is attending school in Mother's residential district. The Court concludes that it is in the child's best interest that parenting time be modified.

Appellant's App. pp. 14-15. Accordingly, we find that the trial court did not abuse its discretion in finding that (1) the child's becoming school age was a substantial change in circumstances and (2) granting Mother primary physical custody is in the child's best interest.[2]

The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.

---

[2] We note that although the trial court granted Mother 'primary physical custody,' this seems only to be an acknowledgement that the Mother is now responsible for the child's physical care slightly more than half of the time. Functionally, Mother received only one more day every two weeks, and Father one less, than if the two had exactly equal parenting time. We see no functional difference between titling this arrangement joint physical custody versus granting Mother primary physical custody as the parties still share nearly equal parenting time.